**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**
NEWARK IMMIGRATION COURT

File No.: A 222-514-622
------------------------------------x
In the Matter of:

**LAMINIA GUACHAMBALA, CHRISTIAN**       March 16, 2026

    The Respondent.                    **<u>Bond Hearing</u>**

------------------------------------x

PROCEEDINGS BEFORE
THE HONORABLE COREY COMBS,
UNITED STATES IMMIGRATION JUDGE

**ON BEHALF OF THE RESPONDENT:**
Leonard Hecht, Esq.
729 Seventh Avenue
14th floor
New York, NY 10019

**ON BEHALF OF DHS:**
Assistant Chief Counsel
Office of the Chief Counsel
By:  Brian Lea, Esq.
201 Varick Street, Room 1130
New York, New York 10014

**ALSO PRESENT:**
Spanish Interpreter

Transcription Service: Carole Ludwig, *Transcription Services*
                     155 East Fourth Street #3C
                     New York, New York 10009
                     Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In |
|----------------|-------------|----|----|
| Department | | | |
| A | I213 | 5 | 8 |
| B | Rap Sheet | 5 | 8 |
| C | Final Administrative Removal Order | 5 | 8 |
| Respondent | | | |
| A | Respondent Tax Returns | 7 | 8 |
| B | Employment Evidence | 7 | 8 |
| C | Document Showing Respondent's Arrest and Dismissal and Sealing of Case | 7 | 8 |
| D | Document Regarding Arrest for DUI | 7 | 8 |
| E | Order that Respondent Enroll in Impaired Driving Program | 7 | 8 |

PROCEEDING                      3

THE COURT:  Okay, this is Immigration Judge Corey Combs at the Immigration Court in Newark, New Jersey, handling a custody redetermination matter off the Elizabeth, New Jersey, Delaney Hall docket.  Today's date is March 16, 2016.  This is a custody redetermination in the case of Christian Manuel Laminia Guachambala, A number 222-514-622.

The respondent is present via VTC from Delaney Hall where he is detained.  The respondent is represented by counsel.  Counsel, can you –

MR. LEONARD HECHT:  Leonard Hecht, Your Honor. Good morning.  Good afternoon.

THE COURT:  Good afternoon, counsel.  The Department is represented by?

MR. BRIAN LEA:  Brian Lea, good afternoon, Judge.

THE COURT:  Good afternoon.  Mr. Interpreter, we have an interpreter in the Spanish language, have you been sworn in today?

THE INTERPRETER:  I believe I have, Your Honor, yes.

THE COURT:  Okay.  Through the interpreter to the respondent, good afternoon, sir.  Can you please state your true and correct name for the record.

PROCEEDING                          4

THE INTERPRETER:  (speaking Spanish)

THE COURT:  I think you might be muted.  Sir, is Mr. Hecht, your attorney who is here today and do you consent to him representing you in this matter?

MR. CHRISTIAN LAMINIA GUACHAMBALA:  Yes.

THE COURT:  Thank you, sir.  We're here today on a district court ordered custody redetermination hearing. The Court has received the order from the district court judge.  The order discusses the respondent being an entrant via the waiver program who has overstayed, and it contains joint stipulations.  The joint stipulations in the order are that within five days the respondent shall have an individualized bond hearing.  Normally, a respondent who enters via the visa waiver program is not eligible for a bond; however, given that there is a stipulation here between the Government and the respondent who is the petitioner in that petition, the Court is here today to handle a bond hearing.

The district court ordered bond order orders that the bond hearing, at the bond hearing, ICE, the Department of Homeland Security bears the burden by establishing by clear and convincing evidence that he poses a danger to the community or a flight risk.  We will hold that bond hearing here today.  The Court has

PROCEEDING                     5

received evidence from both parties in this case which we will discuss now.

The Department of Homeland Security in this case filed evidence Tabs A through C.  Tab A is the I213.  Tab B is the rap sheet.  Tab C is the final administrative removal order of the respondent as he has apparently overstayed his visa waiver admission.  The respondent entered on September 28, 2019 as a visa waiver tourist, and he was allowed to stay for up to 90 days which is the standard for the visa waiver program.  The respondent did not then depart the United States.

(Department Exhibits Tabs A through C marked for identification)

THE COURT:  The Court is also in receipt of evidence from the respondent in this hearing.  DHS, do you have that evidence?  It was accepted by the Court this afternoon.

MR. LEA:  Give me one second.

MR. HECHT:  Your Honor, if I may.

THE COURT:  Of course, counsel, what is it?

MR. HECHT:  I just want to make a correction to my submission.  And that is --

THE COURT:  His entry?

MR. HECHT:  Paragraph 10(c) should just strike

PROCEEDING                              6

out applied for cancellation of removal, that was my

mistake.

THE COURT:  Counsel, I also, while the

Department pulls it up, I noticed in your submission

number 2, you stated that he entered without inspection.

MR. HECHT:  I made a mistake, I'm sorry.

THE COURT:  Okay.

MR. HECHT:  I did this in a rush because I

wasn't sure what time the interview was.  It should be

visa waiver.

THE COURT:  Okay, just making sure that was what

was in the district court ordered order.

MR. LEA:  Your Honor, I don't see any evidence

filed by the respondent.  Is that your (indiscernible)?

THE COURT:  Yes, Department, should be in ECAS.

It was just accepted maybe half an hour ago.  I would try

refreshing your ECAS just to see if it's in there now.

(pause in proceeding)

MR. LEA:  The last submission that I see if the

DHS's submission earlier today.  I don't see anything by

the respondent.

THE COURT:  One moment while I take a look,

getting the Department that evidence.

MR. LEA:  Okay.

PROCEEDING                7

(Whereupon a recess is taken.)

THE COURT:  We're back on the record.  All parties are present once again.  We just briefly went off the record in order to make sure DHS could access that evidence.  Department, are you able to see the copy of the evidence now?  It's 83 pages.

MR. LEA:  Yes.

THE COURT:  Okay.  The respondent's evidence consists of respondent's taxes that he has filed since 2019.  That is exhibit A.  Evidence of the respondent being employed in exhibit B.  Criminal, a document showing that the respondent was once arrested and the case was dismissed and sealed by this exhibit C.  Exhibit D is documents regarding the respondent's arrest for driving while under the influence.  That's in exhibit C, pardon me.  Exhibit E is the respondent being ordered for an impaired driving program as a result of that case.

(Respondent Exhibits A through E marked for identification)

Parties, do you both have all of the evidence now?

MR. LEA:  Yes.

MR. HECHT:  Yeah.  Yes, I'm sorry, Your Honor, yes.

PROCEEDING                        8

THE COURT:  Any objection to any of the evidence submitted by either side?

MR. HECHT:  No, Your Honor.

MR. LEA:  No, Your Honor.

(Department and Respondent Exhibits received in evidence)

THE COURT:  As I said at the onset of this hearing, we're here today with a district court ordered bond.  The burden in this case does fall to the Department by clear and evidence to demonstrate that the respondent either poses a danger to the community or a flight risk.  The district court order also directs this Court to consider any alternative conditions of release with respect to both dangerousness and risk of flight.

The Court would ask that both parties address that today.  Department, since the burden is on you, would you like to address the arguments first.

MR. LEA:  Your Honor, pursuant to the stipulated orders, it's the Department's burden, as you pointed out, to establish by clear and convincing evidence that the respondent poses a danger to the community or a flight risk.  In taking the first aspect, danger to a person or property, we've submitted in evidence, Form 213 as well as a rap sheet, which indicates that respondent has a

PROCEEDING                           9

prior arrest dated on November 18, 2023 where the respondent was arrested for suspicion of driving under the influence of alcohol in the Washington Heights section of Manhattan.  Pursuant to the arrest, he was given an opportunity to provide breath test, and then the respondent refused, resulting in an additional charge of refusal to take a breath test which carries with it an automatic suspension of his driver's license.

On October 24, about a year later, the respondent pleaded guilty to driving while impaired by consumption of alcohol which is a traffic infraction with a conditional discharge and a $300 fine, and his license was suspended for 90 days.

As far as the flight risk is concerned, Your Honor, there is a – although in the order it indicates that the respondent intends to file an asylum claim, he has not done so thus far.  In fact, the 213 that I provided to the Court, upon entering this country and being questioned, he did not indicate any fear or returning to Spain as well as indicating that he has no (indiscernible) in terms of Spain.  Furthermore, in the 213 it appears that during the credible fear interview the respondent did not express fear of returning to his native country of Spain.

PROCEEDING                    10

But, Your Honor, even if the respondent were to file a claim of asylum in this case, he would be hard-pressed to establish past persecution in the country of Spain.  Your Honor, I would ask that you take judicial notice that Spain is experiencing a steady economic growth, has robust civil liberties, and has a strong rule of law.  The unlikelihood of success in an asylum claim were respondent (indiscernible) file one in and of itself makes him a flight risk because of the unlikelihood of success.

Your Honor, taking into consideration the submissions by the respondent's attorney, I see that there are a number of W2s filed in the last few years; however, I do not see an income tax transcript indicating that any taxes were indeed filed, unless I'm missing that.  I don't see it; I just see a slew of W2s that were filed in this case.  I also do not see anything that indicates a permanent address in terms of a lease, utility bill of any kind, a telephone, a cellphone bill that indicates that he lives at that current address.  I also see that there is an arrest that was sealed, and quickly looking at this, it does not specify what the infraction was for which he got a dismissal and a sealing for.  I do see that he provided information regarding the

PROCEEDING                    11

DWI, but as far as the sealed and dismissed matter, I do not see one.

(pause in proceeding)

MR. LEA:  Based on the arguments presented to this Court, I ask that the Court deny the respondent's request for a bond, and Your Honor asked us to discuss any alternatives.  I will reserve that until I hear arguments from the respondent's attorney if that's permitted.

THE COURT:  That's fine, counsel.  Counsel for the respondent, just before you begin, I have one question about your submission.  I noticed on the first page it said that the respondent has worked for the same employer for the last 16 years.  Is that correct?

MR. HECHT:  Since five year, I'm sorry, for the same union, Local 79.

THE COURT:  I'll mark that down as well.  All right, counsel, whenever you're ready.

MR. HECHT:  Okay.  First of all, the Government never addressed that he would be a danger to the community.  He said that he's a flight risk based on conjecture.  The reason why he's not a flight risk is that he's obligated pursuant to a criminal court order to attend the impaired driving class, and he's been doing

PROCEEDING                     12

that since before he was arrested.  He only missed his sessions because of the arrest.  His only reason to continue his job because he has a union job, he's getting paid a salary, he supports a wife, he supports, not a wife but the mother of his child, he pays rent, he's lived in the same residence for five years.  And he has a child to support.

We were limited in the evidence that we could supply because he's not available to provide that information, and so the mother of his child was able to find whatever was handy in the apartment in Manhattan.

As far as the impaired driving offense, it was a non-criminal offense.  It was in violation of Vehicle and Traffic Law, and assuming that he completes his course, it'll be adjudicated in contemplation of dismissal which means the case will be closed and he will not have a criminal conviction.  Similarly, the May 1 arrest also resulted in a dismissal, and the case was sealed.

He has a right to file asylum, and he intends to do that.  He can change his opinion as to what he had when he first came to the United States.  He can change his opinion as to whether he was going to be a visitor or remain here.  And under the ESTA program, he is allowed to have an asylum only proceeding.

PROCEEDING                          13

The district court judge said that the court could consider bond in the event that he's not a flight risk and he's not a danger to the community.  In addition, he's not a danger to the community because the criminal court judge released him, and if he were a danger, the criminal court judge would've kept him in court.  He had the right to not give bond if he felt that he was a danger.

THE COURT:  Counsel, the asylum application, the respondent hasn't filed one prior to now, right?

MR. HECHT:  Yeah, if he's released, he'll be able to give me the documents which underlie the asylum application.  He was living in Ecuador --

THE COURT:  Really quick.  I'm just verifying one of the cases.  Procedurally speaking, I just want to make sure I have that right.  So the respondent likely is going to be facing a one-year filing deadline.  Would you agree?

MR. HECHT:  I would agree, but he has a right to show change of circumstances.

THE COURT:  Is there anything else you'd like to add, counsel?

MR. HECHT:  No.

THE COURT:  That first arrest, what was that

PROCEEDING                    14

for?

MR. HECHT:  Are you asking me or the respondent?

THE COURT:  You counsel if you know.

MR. HECHT:  I don't know, Your Honor.

THE COURT:  The Court will briefly go off the record to consider – oh, first, actually, DHS, is there anything you would like to add about the potential of alternatives to detention after hearing counsel's argument?

MR. LEA:  Judge, I want to adhere to my initial position that there be no bond set in this case.

THE COURT:  I understand, Department, okay.  The Court will briefly go off the record and consider and then we'll come back on.

MR. LEA:  Your Honor, can I just – I see that there are a bunch of tickets that were also submitted. Was that in relation – could I just ask counsel is that related to the first case that he says was dismissed?  We have tickets from Orange Grove, New York, upstate, where it's a DUI with a bunch of other traffic infractions. Aer you saying that those are dismissed?

MR. HECHT:  Everything was dismissed.

THE COURT:  Just to clarify, counsel, I think I see what the Department's getting at.  The date of the

PROCEEDING                          15

offense on those is March 18, 2022.  Do you know if all of those tickets pertained to the first arrest that was sealed or if they pertain to what appears on the Department's rap sheet to be an arrest in 2023?

MR. HECHT:  I believe it pertains to the first arrest.

THE COURT:  Okay.  Anything else, Department?

MR. LEA:  No, Your Honor.

THE COURT:  Now the Court will briefly go off and consider.

(Whereupon a recess is taken.)

THE COURT:  The Court is back on the record. All parties previously present are once again present. Nothing was discussed with the Court off the record.

The Court is ready to render its decision in this case.  Sir, I'm going to – counsel, do you waive full interpretation of my decision and afterwards I'll give a short summary of it to your client?  Mr. Hecht. Mr. Hecht, I'm back.  Sorry, the Court forgot to unmute its microphone when it returned.

MR. HECHT:  Okay.

THE COURT:  I was just saying --

MR. HECHT:  Your Honor, I just wanted to point out --

PROCEEDING                    16

THE COURT:  What's that, counsel?

MR. HECHT:  I just wanted to point out on page 57 is the fixed address, 58.

THE COURT:  Yeah, I believe I saw it earlier. Let me make sure I've got the right – I believe that's what I saw earlier.

MR. HECHT:  And so the letter from the Lighthouse Buildings Incorporated --

(interposing)

THE COURT:  I see, talking about his employment, counsel?

MR. HECHT:  Yeah, they provide his address, 509 West 161st Street, apartment 3E, New York, 10032.

THE COURT:  The Court is now ready to render its decision in this case.  Counsel, do you waive full interpretation of the Court's decision and the Court can give a summary of its decision to the respondent after?

MR. HECHT:  Sure.

THE COURT:  Thank you.  As I stated at the beginning of today, we're here pursuant to a district court ordered bond hearing.  This bond hearing, the parameters set out for us by the district court are that ICE bears the burden of establishing by clear and convincing evidence that the respondent poses a danger to

PROCEEDING                           17

the community or a flight risk, and the court also ordered that the Court consider alternative conditions of release.  The Court will address both of those things.

The Court has a lot of concerns about the respondent's criminal activity in this case.  Starting out we have that first arrest that was dismissed and sealed, but, nonetheless, the Court is concerned by the underlying facts in that case.  A number of traffic violation tickets were submitted pertaining to that arrest in the respondent's submission.  The Court, after reviewing them, notes that the tickets were for a DUI of 0.08 or more, consumption of alcohol in a motor vehicle, not wearing a seat belt, an unsafe lane change, driving at a speed that is not reasonable, driving a motor vehicle off paved and designated areas, not having had headlights on, driving across a hazard marking, driving without insurance, driving an unregistered motor vehicle, and, finally, an aggravated DUI of 0.18 percent or higher.

The Court understands that this charge for whatever reason was dismissed and sealed, and if this was the only arrest for the respondent, the Court may not have as many concerns about the underlying circumstances, but taken with the other arrest, the Court does have

PROCEEDING                        18

grave concerns.  The respondent was additionally arrested for driving while under the intoxication in November 2023.  That arrest has now resulted in the respondent being ordered to a court-ordered alcohol program and is, has been adjourned with contemplation of dismissal.

When you take both of these together, the Court does believe that the respondent is a danger to the community.  It believes that this has been demonstrated by clear and convincing evidence.  Driving while under the influence is an inherently dangerous action not only to a person's individual self but to everyone around them on the road, if anyone was ever in their vehicle, although that does not appear to be the case here.

What this record contains demonstrates to the Court a person who has a pattern of behavior that is dangerous to them, the people around them.  Once again, although that first arrest resulted in a dismissal, the combination of the high blood alcohol content and what appears to the Court to be unsafe behaviors during it is very concerning.  If you combine that with the respondent's second arrest where the respondent was, once again, charged with driving while under the influence, the respondent in that case, in that second arrest, refused to take a breath test.  The Court definitely

PROCEEDING                          19

finds this concerning when you take into account the pattern as it appears of driving while under the influence.

The district court ordered that this Court address alternative conditions to release with respect to both dangerousness and risk of flight.  This Court has considered them, taking into consideration, and does not believe that there are any alternative conditions of release that would be sufficient in this case.  When it comes to dangerousness, an ankle monitor, alternate conditions where the respondent is released, do not help those around him.  The Court is making a determination that the respondent is a danger to those around him, and, therefore, no amount of bond or no alternative conditions could satisfy the Court that he would not be a danger to those around him.

Alternatively, the Court will also address flight risk in this case.  The Court does note that the respondent has some positive factors going towards community ties.  He has a (indiscernible) son here.  He lives at the same address he apparently has lived at for several years, although no lease or documentation showing that was submitted.  And the respondent lives with the mother of his son.

PROCEEDING                    20

The respondent has argued through counsel that he has had the same employment over five years.  The Court does have some concerns with the employment history of the respondent.  On page 58 of the respondent's submission is a letter from the respondent's apparent employer.  The Court notes that his employment is on an as-needed basis depending on job site availability and project demands.  The Court can't give full weight to this type of job situation as far as consistent employment to go back to.  This states that his last working day on a job site was January 5, 2026.  It's unclear to the Court if the respondent does have a job to go back to.

The other does have other concerns regarding flight risk, and, first of all, the respondent entered as a visa waiver entrant due to his citizenship from Spain.  The Court was a little confused.  It's concerning that there were multiple issues in the respondent's submission that we had to clarify regarding the manner of entry regarding how long the respondent has been working here, but we have clarified those, and despite those clarifications the Court still does have concern about flight risk.

The respondent entered via the visa waiver

PROCEEDING                              21

program in September of 2019 with a maximum stay of 90 days leading to December 2019.  Counsel for the respondent has said that, you know, the respondent has now changed his mind even if he didn't have fear when he came in, but the respondent did not express any fear when entering, and the Court would note that he entered approximately five and a half years ago and at this time still has not filed any applications for relief in the form of a I589 for asylum withholding and protections under the Convention Against Torture.

Not only has it been a long time, which very well may bar the respondent from asylum leaving him with only withholding and protections under the Convention Against Torture, but he will also be making an argument about fear back to Spain.  The Court will take administrative notice of the 2024 Department of State Human Rights Report for Spain, and it's what the Court would view as good conditions there.  The Court is unsure of how viable the respondent's claim may be, and that is largely because the respondent has not filed any application for relief at this time.  No draft application for relief has been entered in the bond record, though it would help enlighten the Court as to what the claim is.

PROCEEDING                              22

When it comes to alternatives, alternative conditions of release, the Court does not believe that any would sufficiently ensure that the respondent return both for his hearings and if the case came to an ultimate removal order would comply with such.  While the respondent does not have some connections to the United States, those are outweighed by both the lack of application, the time sense of the application, and the likelihood of success on that application.  For that reason, alternatively, if a higher court disagreed with this Court about the respondent posing a danger to those around him, this Court would deny his bond as a flight risk and find that no amount of bond could ensure his return to court and his compliance with any potential (indiscernible) order in this case.

Counsel for the respondent, I assume you reserve appeal?

MR. HECHT:  Yes, Your Honor.

THE COURT:  And DHS.  You'll reserve it, yes or no, appeal?

MR. LEA:  We don't appeal.

THE COURT:  Okay.  Through the interpreter, sir, the Court has made a decision in your custody redetermination request.  The Court has found that

PROCEEDING                              23

because of your arrests, both of which are apparently for driving while under the influence in the few years since you've been here, that you pose a danger and, therefore, cannot grant you bond.  The Court also found that because of your lack of application and how long you've been here without filing an application outweighs the positive factors in your case tying you to the United States.

Your attorney has reserved appeal on your behalf and can talk to you about appealing the Court's decision if you would like.  But that will be it for today's hearing, sir.  Counsel, Department, anything else?

MR. HECHT:  No, Your Honor, thank you.

MR. LEA:  Nothing, Your Honor, thank you.

THE COURT:  All right, thank you.  Have a good day, everyone.

(Whereupon the matter is adjourned.)

24

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in In the Matter of CHRISTIAN LAMINIA GUACHAMBALA, File number A 222-514-622, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

CAROLE LUDWIG

Date:  April 15, 2026