**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

June 15, 2026

Honorable Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Laminia Guachambala v. Genalo, et al.*, No. 26-cv-2851 (GRB)

Dear Judge Brown:

This Office represents Respondents in the above captioned habeas petition filed by Petitioner Christian Manual Laminia Guachambala ("Petitioner"). Docket Entry ("DE") #1. This letter is respectfully submitted pursuant to Your Honor's Order to Show Cause dated May 13, 2026 (DE #5).

**Background**

Petitioner is a national of Ecuador, and citizen of Spain, without current legal status to remain in the United States. Declaration of Deportation Officer Crystal Harris ("Harris Decl.") ¶ 1. On September 28, 2019, Petitioner entered the United States pursuant to the nonimmigrant Visa Waiver Program ("VWP") with authorization to remain in the United States for a temporary period not to exceed 90 days. *Id.* ¶ 3. Petitioner was scheduled to leave the United States on October 5, 2019, but failed to board his flight. *Id.* ¶ 4. Petitioner remained in the United States beyond 90 days without authorization from the Department of Homeland Security. *Id.* ¶ 5.

On November 18, 2023, Petitioner was arrested for suspicion of driving under the influence of alcohol in violation of New York State Vehicle and Traffic Law ("VTL") § 1192(2), and refusal to take a breath test in violation of VTL § 1194. *Id.* ¶ 6; *see also* DE No. 7-1. On October 24, 2024, Petitioner pled guilty to driving while impaired by consumption of alcohol in violation of VTL § 1192, and was conditionally discharged, ordered to pay a $300 fine and his license was suspended for 90 days. Harris Decl. ¶ 7; *see also* DE No. 7-1.

On March 4, 2026, at approximately 5:40 p.m., ICE Enforcement and Removal Operations' officers, assisted by Customs and Border Patrol ("CBP") officers, encountered Petitioner while conducting a targeted enforcement action in New York, New York, while searching for another individual. Harris Decl. ¶ 8. While conducting surveillance, officers observed a male matching the physical description of the primary target approaching a nearby vehicle outside the target's residence. *Id.* ICE officers conducted a vehicle stop, and after identifying themselves as ICE officers, engaged in a consensual field interview with him. *Id.* The interview revealed the

individual, later identified as Petitioner, was not the primary target. *Id.* During the interview, however, Petitioner disclosed that he is a citizen and national of Spain, born in Ecuador, and overstayed his visa. *Id.* A record check confirmed that Petitioner overstayed his visa and does not have legal status to remain in the United States. *Id.*

On the same date, a Form I-200 Warrant for Arrest of Alien ("Form I-200") was issued under which, at approximately 5:50 p.m., the Petitioner was arrested and detained. *Id.* ¶ 9 & Ex. A. Petitioner was subsequently transported to 26 Federal Plaza, New York, NY for post-arrest processing. *Id.* ¶ 9. Petitioner remained detained at 26 Federal Plaza, New York, NY between approximately 7:30 PM on March 4, 2026 and approximately 4:11 PM on March 7, 2026. *Id.*

On March 5, 2026, at approximately 3:45 p.m., Petitioner was served with a VWP Notice of Intent to Issue a Final Administrative Removal Order. *Id.* ¶ 10 & Ex. B. The Notice of Intent to Issue a Final Administrative Removal Order set forth that: (a) Petitioner was admitted to the United States on September 28, 2019 as "a nonimmigrant VWP with authorization to remain in the United States for a temporary period"; (b) Petitioner remained in the United States beyond the expiration of the time permitted under the VWP; and (c) Petitioner was subject to removal pursuant to "Section 237(a)(1)(B) of the Immigration and Nationality Act" (the "INA") because he "remained in the United States for a time longer than permitted, in violation of the INA or any other law of the United States." *Id.*

On March 5, 2026, at approximately 6:20 p.m., ICE issued a VWP Final Administrative Removal Order and served it on Petitioner. *Id.* ¶ 11 & Ex. C. The Final Administrative Removal Order outlined that DHS had determined that: (a) Petitioner was admitted to the United States under the VWP as a nonimmigrant visitor on September 28, 2019; (b) Petitioner was "removable as charged" and ordered "removed from the United States"; and (c) under the conditions of the VWP, Petitioner "waived any right to contest, other than on the basis of an application for asylum, any action for [his] removal". *Id.* On March 5, 2026, Petitioner was also served with a VWP Notice to Alien Ordered Removed/Departure Verification. *Id.* ¶ 12 & Ex. D.

On March 7, 2026, Petitioner was transferred to Delaney Hall Detention Facility, Newark, NJ. *Id.* ¶ 13. On March 16, 2026, Petitioner had a bond hearing before an Immigration Judge. *Id.* ¶ 14; *see also* DE No. 7-2 (transcript of proceedings). At the conclusion of the hearing, the Immigration Judge, while also considering facts related to Petitioner's sealed and dismissed prior alcohol related driving charge, deemed Petitioner a "danger to the community" and denied bond. Harris Decl. ¶ 14 & Ex. E; *see also* DE No. 7-2 at 16-19. The Court also noted concerns related to Petitioner's risk of flight in light of ambiguity about Petitioner's employment status and alleged request for asylum, which the Court noted had not been filed. Harris Decl. ¶ 14; *see also* Docket Entry No. 7-2 at 19-22. The Immigration Judge also did not believe that any alternative conditions of release "would sufficiently ensure that [Petitioner would] return both for his hearings and if the case came to an ultimate removal order" that Petitioner would comply with such. Harris Decl. ¶ 14; *see also* DE No. 7-2 at 22.

To date, Petitioner has not filed an application for asylum, nor appealed the decision of the Immigration Court to the Board of Immigration Appeals (the deadline to appeal was April 15, 2026). Harris Decl. ¶ 15 & Ex. E. On April 10, 2026, Petitioner was transferred to the Metropolitan

Detention Center ("MDC") in Brooklyn, New York, where he has remained detained. *Id.* ¶ 16. By order dated May 15, 2026, this Court declined to hold a bail hearing because Petitioner "has already had a bail hearing before an Immigration Judge who determined that he posed a flight risk and danger to the community". *Id.* ¶ 17.

**VWP Statutory Framework**

Under the VWP, entrants to the United States from countries participating in the program may be admitted to the United States for a period not exceeding 90 days without needing to apply for, and receive, a visa. 8 U.S.C. § 1187(a)(1). The entrant must possess a valid, unexpired passport at the time of admission that meets certain criteria, and comply with other requirements set forth in the statute. *Id.* at § 1187(a). As part of the process, the entrant waives any right "to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States" or "to contest, other than on the basis of an application for asylum, any action for removal of the alien." *Id.* at § 1187(b). Indeed, although the VWP affords visitor aliens with great flexibility and convenience, those benefits come at a cost. Most significantly, a VWP visitor forfeits "any right to challenge their removal, except that they may apply for asylum." *Shabaj v. Holder*, 602 F.3d 103, 105 (2d Cir. 2010) (quoting *Kanacevic v. INS*, 448 F.3d 129, 133 (2d Cir. 2006)). Moreover, a VWP entrant "who do[es] not waive the right to review or contest removal 'other than on the basis of an application for asylum' 'may not be provided with a waiver under the program.'" *Id.* (quoting 8 U.S.C. § 1187(b)). In effect, an alien seeking admission to the United States under the VWP can be denied admission at the border or can be removed at any time after entry without further process in exchange for not needing a visa to enter the United States.

**The Habeas Petition Should Be Denied And Detention Upheld**

As opposed to 8 U.S.C. §§ 1225 or 1226, the VWP itself provides detention authority via 8 U.S.C § 1187(c)(2)(E). In support of this argument, United States Immigrations and Customs Enforcement ("ICE") has previously cited *Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009), where the Board of Immigration Appeals ("BIA") specifically noted that 8 U.S.C § 1187(c)(2)(E) is the statutory authority for detention for a VWP alien. However, Respondents are aware that "most federal courts that have directly addressed whether a noncitizen who has violated the [VWP] can be detained pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention." *Quispe v. Becerra*, 2025 WL 3774570, at *4-*5 (E.D. Cal. Dec. 31, 2025) (citing cases); *see also Lee v. Warden, Buffalo Detention Facility*, 2026 WL 1413151, at *4 (W.D.N.Y. May 20, 2026); *Nicolas T. v. Noem*, 2026 WL 1010750, at *1 (S.D. Tex. Mar. 30, 2026); *Molina v. Soto*, 2025 WL 3281820, at *3 (D.N.J. Nov. 25, 2025). Respondents respectfully disagree with these courts' assessments. Notwithstanding, should the Court follow this prior precedent here, that would be dispositive as to whether 8 U.S.C § 1187(c)(2)(E) provides statutory authority for detention here.

The Petition should nonetheless be denied, and Petitioner's detention upheld, under the statutory authority set forth in 8 U.S.C. § 1231 which "authorizes detention 'when an alien is ordered removed' and enters the 'removal period,' which begins on the latest of three possible events, including '[t]he date the order of removal becomes administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (alteration in original) (quoting 8 U.S.C. §§ 1231(a)(1)(A)-(B)). The VWP Final Administrative Order of Removal ("FARO") issued to Petitioner on March 5, 2026 is a final order of removal because he has no asylum application pending, *Lee*, 2026 WL 1413151, at *4, and he remains in his removal period.[1] Accordingly, Petitioner's detention is mandatory and his Petition should be denied. *See id.* at *6 (finding that detention authority cannot be found under 8 U.S.C § 1187(c)(2)(E) but nonetheless is found under 8 U.S.C. § 1231 where, as here, a VWP FARO was issued and no asylum application was pending because "the Court is without authority to order the Petitioner be released . . . .").

To conserve judicial resources and to expedite the Court's consideration of this case, Respondents submit that the Court can decide this matter without further briefing or a hearing. However, should the Court prefer to receive a memorandum of law, Respondents will file such a brief upon the Court's direction. Notwithstanding their submission of this letter in lieu of a formal brief, Respondents reserve all rights, including the right to appeal.

Respondents thank the Court for its consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: */s/ Robert W. Schumacher*
Robert W. Schumacher
Assistant U.S. Attorney
(631) 715-7871

cc: S. Michael Musa-Obregon, Esq.

---

[1] Under §§ 1231(1)-(2), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" during which time "the Attorney General shall detain the alien." While this 90-day period expired here on or about June 5, 2026, Petitioner's removal was stayed by this Court's May 13, 2026 order. DE No. 5. Even if not stayed, the U.S. Supreme Court has held that detention after the issuance of an order of removal is presumptively reasonable for six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Continued detention is also appropriate past the 90-day period here because, on March 16, 2026, Petitioner had a bond hearing before an Immigration Judge, where bond was denied after Petitioner was found to be a "danger to the community". *See* DE No. 7-2 (transcript of proceedings) at 16-19; *see also* Harris Decl. Ex. E. Pursuant to 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed . . . who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ."